UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN K. TOSCANO,<br><br>        Plaintiff,<br><br>    v.<br><br>G.D. LEWIS, *et al.*,<br><br>        Defendants.<br>_____/ | No. C-12-5893 EMC (pr)<br><br>**ORDER DENYING REPETITIOUS MOTIONS AND MOTION TO SEVER; AND ORDER FOR BRIEFING SCHEDULE** |

In this *pro se* prisoner's civil rights action, Ben Toscano alleges that prison officials did not protect him from the dangers arising from the fact that he had been deemed "no good" by members of the Nuestra Familia and Northern Structure prison gangs, and after he informed on members of those gangs. Mr. Toscano claims that Defendants were deliberately indifferent to a serious risk to his safety in their housing decisions between March 2011 through his departure from Pelican Bay State Prison to another prison in January 2013, that some Defendants acted with a retaliatory intent in their decision-making, and that two Defendants used excessive force on him when he was being attacked by his cellmate. This matter is now before the Court for consideration of several motions from the parties.

A.    <u>Miscellaneous Motions</u>

After the Court denied his four motions for appointment of counsel, Mr. Toscano filed two motions to appoint a certified law student to assist him. The motions are DENIED. (Docket # 114 and # 115.) The Northern District of California does not run a certified law student practice program.

1    Mr. Toscano's motion for reinstatement of claims is DENIED.  (Docket # 99.)  The motion is
2 frivolous because the Court has already rejected his arguments for reinstatement of some dismissed
3 claims.  His current motion (Docket # 99) is identical to the motion at Docket # 85, except for the
4 new signature date, and both are duplicative of the motions at Docket # 31 and # 34, which were
5 denied in the order at Docket # 51.[1]

6    Mr. Toscano's motion to have the case reassigned to a different judge is DENIED.  (Docket
7 # 100.)  Mr. Toscano urges that he does not think he will receive a fair opportunity to collect
8 evidence and present his case because his earlier discovery motions were ignored or denied.  *Id.*  Mr.
9 Toscano's earlier discovery motions were properly denied.  The Court has explained the discovery
10 process, and it is Mr. Toscano's failure to follow that process that has caused his motions to be
11 denied.  (The discovery problem is discussed more in the next section of this order.)

12    Mr. Toscano's motion for default against several Defendants is DENIED.  (Docket # 103.)
13 The motion is frivolous.  No Defendant was in default when Mr. Toscano filed the motion.
14 Defendants had filed their request for extension of time a week before the deadline for filing a
15 dispositive motion.  It was permissible for them to mail a copy of that document to Mr. Toscano
16 rather than to hand-deliver it to him.

17    Mr. Toscano's motion for leave to amend to add a new prayer for relief is GRANTED.
18 (Docket # 110.)  The first amended complaint is now deemed to be amended to include the text at
19 pages 1-3 of Docket # 110 in place of the prayer for relief at pages 30-31 of the first amended
20 complaint.  The operative pleading is now the first amended complaint (Docket # 20),[2] as amended
21 by the amendment (Docket # 110), and as supplemented by the "supplement[al] complaint" (Docket
22 # 12).

---

[1] Repetitious presentation of the same unsuccessful legal arguments needlessly delays the resolution of a case and wastes limited judicial resources.  The Court has made its ruling on the dismissed claims, and further requests from Mr. Toscano to reinstate those claims would be frivolous and likely will result in monetary or non-monetary sanctions.  *See* Fed. R. Civ. P. 11.

[2] Mr. Toscano did not file his amended complaint twice.  The amended complaint at Docket # 20 is a copy of the exhibit at Docket # 8-1.  The document was filed and docketed by the Court as an amended complaint so that it could be found more easily on the electronic docket, rather than leaving it as an exhibit to the motion at Docket # 8.

Defendants' request for an extension of the deadline to file a dispositive motion is GRANTED. (Docket # 91.) A new briefing schedule is set at the end of this order.

B. <u>Mr. Toscano's Discovery Motions</u>

Mr. Toscano has filed a flurry of discovery motions. Mr. Toscano's motions for an order to compel discovery (Docket # 90, # 94, # 101, # 102, # 116, and # 117) are DENIED. Defendants opposed the motions (or, at least the first couple of them) on the ground that they had not received any discovery requests from Mr. Toscano. Even if Mr. Toscano properly had served his discovery requests on Defendants, Mr. Toscano did not take steps to attempt to resolve any discovery disputes with Defendants before seeking assistance from the Court. The Court specifically discussed the discovery process in the July 17, 2013 order, including the meet-and-confer requirement. *See* Docket # 51 at 3-4. As the Court explained:

> [A] party may not obtain discovery by simply telling the Court what he wants to learn and asking the Court to force someone else to provide the information. The litigant must personally submit the requests to defense counsel or third parties in compliance with Federal Rule of Civil Procedure 26 -36, and deal directly with defense counsel or the third parties. The Court generally is not involved in the discovery process and only becomes involved when there is a dispute between the parties about discovery responses. Discovery requests and responses normally are exchanged between the parties without any copy sent to the Court. *See* Fed. R. Civ. P. 5(d)(1) (listing discovery requests and responses that "must not" be filed with the Court until they are used in the proceeding or the Court orders otherwise). Only when the parties have a discovery dispute that they cannot resolve among themselves should the parties even consider asking the Court to intervene in the discovery process. The Court does not have enough time or resources to oversee all discovery, and therefore requires that the parties present to it only their very specific disagreements. And to promote the goal of addressing only very specific disagreements (rather than becoming an overseer of all discovery), the Court requires that the parties meet and confer to try to resolve their disagreements before seeking Court intervention. See Fed. R. Civ. P. 37(a)(1); N. D. Cal. Local Rule 37. A plaintiff must engage in good faith efforts to meet-and-confer to try to resolve his discovery disputes before seeking an order compelling discovery. The problem with Plaintiff's discovery motions is that he has not followed the steps required of him by Federal Rules of Civil Procedure 26-27. The motions to produce documents are improper, as requests for production of documents should be served on defendants (or their counsel) and not on the Court. The motions to compel are improper in that, even if he properly had served requests for production on each defendant, Plaintiff did not take steps to attempt to resolve with defendants any disputes before seeking assistance from the Court. The denial of Plaintiff's motions is without prejudice to Plaintiff filing a motion to compel at some later date, but

3

> only after he has made discovery requests and has attempted to resolve any disagreements with opposing counsel before filing such a motion.

Docket # 51 at 3-4.

Three discovery methods appear to be most likely of interest to Mr. Toscano: interrogatories, requests for production of documents, and requests for admissions. The Court now quotes them at length so that Mr. Toscano will have no reason not to follow them. Federal Rule of Civil Procedure 33 governs interrogatories and provides:

> **(a) In General**.
>
> > *(1) Number*. Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2).
> >
> > *(2) Scope*. An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.
>
> **(b) Answers and Objections**.
>
> > *(1) Responding Party*. The interrogatories must be answered:
> >
> > > (A) by the party to whom they are directed; or
> > >
> > > (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.
> >
> > *(2) Time to Respond*. The responding party must serve its answers and any objections within 30 days after being served with the interrogatories. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.
> >
> > *(3) Answering Each Interrogatory*. Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.
> >
> > *(4) Objections*. The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.
> >
> > *(5) Signature*. The person who makes the answers must sign them, and the attorney who objects must sign any objections.
>
> **(c) Use**. An answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence.

**(d) Option to Produce Business Records**. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

>(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

>(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33.

Federal Rule of Civil Procedure 34 governs requests for production of documents and things, and provides:

>**(a) In General**. A party may serve on any other party a request within the scope of Rule 26(b):

>>(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

>>>(A) any designated documents or electronically stored information--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

>>>(B) any designated tangible things; or

>>(2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

>**(b) Procedure**.

>>(1) Contents of the Request. The request:

>>>(A) must describe with reasonable particularity each item or category of items to be inspected;

>>>(B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts; and

>>>(C) may specify the form or forms in which electronically stored information is to be produced.

>>(2) Responses and Objections.

5

(A) Time to Respond. The party to whom the request is directed must respond in writing within 30 days after being served. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

(B) Responding to Each Item. For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons.

(C) Objections. An objection to part of a request must specify the part and permit inspection of the rest.

(D) Responding to a Request for Production of Electronically Stored Information. The response may state an objection to a requested form for producing electronically stored information. If the responding party objects to a requested form--or if no form was specified in the request--the party must state the form or forms it intends to use.

(E) Producing the Documents or Electronically Stored Information. Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(I) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

**(c) Nonparties**. As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection.

Fed. R. Civ. P. 34.

Federal Rule of Civil Procedure 36 concerns requests for admission and provides:

**(a) Scope and Procedure**.

*(1) Scope*. A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:

(A) facts, the application of law to fact, or opinions about either; and

(B) the genuineness of any described documents.

*(2) Form; Copy of a Document*. Each matter must be separately stated. A request to admit the genuineness of a document must be accompanied by a

6

> copy of the document unless it is, or has been, otherwise furnished or made available for inspection and copying.
>
> ***(3) Time to Respond; Effect of Not Responding***. A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.
>
> ***(4) Answer***. If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.
>
> ***(5) Objections***. The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.
>
> ***(6) Motion Regarding the Sufficiency of an Answer or Objection***. The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served. The court may defer its final decision until a pretrial conference or a specified time before trial. Rule 37(a)(5) applies to an award of expenses.
>
> **(b) Effect of an Admission; Withdrawing or Amending It.** A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits. An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

Fed. R. Civ. P. 36.

At this point, Mr. Toscano has two choices with regard to any further discovery. He can continue to ignore the procedural requirements of the Federal Rules of Civil Procedure and the Northern District Local Rule 37, and probably obtain nothing from Defendants. Alternatively, Mr. Toscano can comply with the Federal Rules of Civil Procedure in preparing and serving on defense counsel his discovery requests, and moving to compel *only* after he has (a) received an unsatisfactory response and (b) met and conferred with defense counsel to resolve any discovery

1  disputes.  The first choice is a path to almost-certain failure; the second choice at least has the

2  possibility of success.  Further, if Mr. Toscano does not comply with the discovery rules, the Court

3  will not look favorably on any future request for an extension of a deadline to oppose a dispositive

4  motion if that request is based on a claimed lack of discovery.

5  C.     <u>Defendants' Motion To Sever</u>

6         Defendants move to sever the claims against some of the Defendants in the first amended

7  complaint.  They describe the claims as including a claim that certain Defendants failed to prevent

8  Mr. Toscano's cellmate from stabbing him in June 2011, other Defendants deliberately failed to

9  disclose documents to Mr. Toscano in December 2010, other Defendants on the departmental review

10 board retaliated against Mr. Toscano in October 2012, and some Defendants mishandled Mr.

11 Toscano's inmate grievances between 2002 and 2012.  Docket # 111 at 5.[3]  Defendants ask that the

12 Court "dismiss without prejudice all claims not arising from Toscano's central allegation that on

13 June 27, 2011, Defendants placed inmate Ramirez in Toscano's cell despite a danger to Toscano,

14 and that Defendants then responded with excessive force when Ramirez stabbed Toscano." *Id.* at 6.

15 Mr. Toscano does not oppose the motion to sever.

16        Under Federal Rule of Civil Procedure 20(a) all persons may be joined in one action as

17 defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with

18 respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"

19 and if "any question of law or fact common to all defendants will arise in the action."  "A buckshot

20 complaint that would be rejected if filed by a free person – say, a suit complaining that A defrauded

21 the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright,

22 all in different transactions – should be rejected if filed by a prisoner." *George v. Smith*, 507 F.3d

---

[3] Defendants overstate the current breadth of Mr. Toscano's case by failing to take into account the dismissal of some claims.  For example, they urge that the claims span a ten-year time period from 2002 through 2012.  However, the Court dismissed claims for non-disclosure of information before 2010, dismissed any potential claim regarding the 2007 gang validation, and dismissed claims related to the administrative appeals for those issues.  *See* Docket # 19 at 7-10.  Mr. Toscano's remaining claims arose in the time period from his release from the security housing unit in March 2011 through his transfer from the prison in January 2013.  And, although Defendants urge that there are seven claims, the Court found cognizable only three legal theories: deliberate indifference to safety, excessive force and retaliation.  *See* Docket # 19 at 10-12.

605, 607 (7th Cir. 2007) (prisoner complaint seeking to join 24 defendants and approximately 50 distinct claims made no effort to show that the 24 defendants had participated in the same transaction or series of transactions or that a question of fact was common to all defendants). The Ninth Circuit "has described the term 'transaction or occurrence' as referring to 'similarity in the factual background of a claim'; claims that 'arise out of a systematic pattern of events' arise from the same transaction or occurrence. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir.1997); *see also Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470 (9th Cir.1960) (claims that have 'very definite logical relationship' arise out of same transaction and occurrence)." *Bautista v. Los Angeles County*, 216 F.3d 837, 842-43 (9th Cir. 2000) (Reinhardt, J., concurring). "Instead of developing one generalized test for ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, the courts seem to have adopted a case-by-case approach. As stated by one district court judge: 'there can be no hard and fast rule, and that the approach must be a general one of whether there are enough ultimate factual concurrences that it would be fair to the parties to require them to defend jointly [the several claims] against them.'" 7 Wright, Miller & Kane, Federal Practice and Procedure § 1653 (3d ed. 2001) (citation omitted).

  Here, the first amended complaint alleges a right to relief against Defendants "with respect to or arising out of the same . . . series of transactions or occurrences," as required for permissive joinder. *See* Fed. R. Civ. P. 20(b). Mr. Toscano's claims against all the Defendants all pertain to safety-based housing concerns that stem from a falling out between Mr. Toscano and the Northern Structure and Nuestra Familia prison gangs. While the claims against the different Defendants can be looked at in isolation, they also reasonably can be viewed as being based on a series of related occurrences because they have the common thread of being about housing-related decisions for an inmate allegedly targeted for assault by specific gangs. Even Mr. Toscano's claims against a subset of the Defendants for retaliation are related to his Eighth Amendment claims because they also concern the housing decisions, although they involve a different mental state (i.e., an intent to chill the inmate's First Amendment rights). There need not be a conspiracy or concerted efforts by all Defendants for the claims to arise out of the same series of transactions or occurrences; the "'similarity in the factual background'" or "'very definite logical relationship,'" *see Bautista*, 216

1  F.3d at 842-43, among the housing-related decisions for the inmate allegedly in specific danger from
2  two gangs is sufficient to permit the joinder of all the Defendants.

3        The second requirement for joinder – the existence of questions of fact or law common to all
4  defendants – also exists here.  Mr. Toscano alleges that prison officials knew he was in danger from
5  his former gang(s).  *See* Docket # 20 at 12 (Mr. Toscano had been validated in 2007 as an associate
6  of the Nuestra Familia and/or Northern Structure gang).  He alleges that confidential information
7  disclosure forms given to him in December 2010 showed that there were documents in his prison file
8  stating "that Plaintiff was deemed 'no good' by the Northern Structure (NS) and Nuestra Familia
9  (NF) Northern prison gangs and that plaintiff would be dealt with once he got a cell partner.
10 Therefore, knowing plaintiff was placed on a 'hit list' and targeted for assault."  Docket # 20 at 9.
11 He also alleges that, in April 2011, he provided information about "Northern inmates" in his housing
12 section and that prison officials conducted a cell search the next day, which made it "obvious" to
13 prisoners that he had "provided information against" the Northern inmates.  *Id.* at 13-14.  One
14 question of fact common to all the Defendants will be whether Mr. Toscano was in an actual and
15 particular danger from the Northern Structure and Nuestra Familia gangs.  Evidence on this same
16 point would have to be presented in each case if the claims against the defendants were severed.
17 (This is not to say that every prisoner could file an action joining all claims about his housing in a
18 single complaint, but the allegations in this prisoner's first amended complaint suggest that he was
19 in a known and specific danger from the Northern Structure and Nuestra Familia prison gangs.)
20 There also might be questions of fact common to all Defendants as to why it took so long for the
21 prisoner to be moved away from the gangs that allegedly had targeted him.  The first amended
22 complaint satisfies Rule 20(a)(2)'s two requirements for permissive joinder of all Defendants.

23       The Court next considers Defendants' alternate request to issue a protective order related to
24 the joinder of the defendants.  "The court may issue orders – including an order for separate trials –
25 to protect a party against embarrassment, delay, expense, or other prejudice that arises from
26 including a person against whom the party asserts no claim and who asserts no claim against the
27 party."  Fed. R. Civ. P. 20(b).  Defendants argue that, even if joinder of all Defendants is
28 permissible, the Court should at least sever the claims *not* related to the June 27, 2011 attack because

they are unrelated to the claims for the June 27, 2011 events, such that "adjudicating these claims would prejudice the Defendants, confuse the jury, and drain the Court's resources." Docket # 111 at 2. The Court disagrees. Defendants understandably would prefer the claims against each Defendant to be tried separately, but doing so would deprive the jury of a complete picture of Mr. Toscano's situation, where prison officials allegedly repeatedly ignored his requests to avoid being placed in housing that exposed him to a serious ongoing danger. Additionally, trying the claims against each Defendant separately allows individual Defendants to blame the absent Defendants for the decision-making with regard to Mr. Toscano's housing. Severing the claims against each Defendant (or severing all claims except those related to the June 27, 2011 attack) also does not appear to promise any efficiency for the Court, as each claim still would have to be adjudicated, albeit in separate actions. The June 27, 2011 housing decision is different than the other events alleged in the first amended complaint primarily because it was the only one that resulted in physical injury to Mr. Toscano and was the only one where Mr. Toscano stated that a specific inmate was a specific danger to him. Those differences can be addressed by argument and jury instructions if the case is tried before a jury and do not warrant separate trials before separate juries.

Finally, Defendants argue that the first amended complaint fails to plead a retaliation claim against the four defendants they believe are properly joined, i.e., correctional officer ("C/O") Bustamontes, C/O Garza, C/O Eberly, and C/O Thompson. The Court disagrees. The first amended complaint alleges that (a) Mr. Toscano told C/O Bustamontes, C/O Garza and C/O Eberly that he could not live in the same cell with Mr. Ramirez because of a danger to him; (b) they refused to move him; (c) Mr. Ramirez attacked Mr. Toscano later that day; (d) C/O Thompson and C/O Eberly used excessive force to break up the attack; (e) "all this in retaliation because plaintiff told [various other correctional officials] numerous times that plaintiff would testify against them if they were fabricating reports"; and (f) unspecified Defendants retaliated against him for exercising his First Amendment rights. Docket # 20 at 15, 16, 28. Giving the *pro se* first amended complaint the liberal construction to which it is entitled, the allegations suffice to state a cognizable retaliation claim against each of the Defendants mentioned in the motion.

Defendants note that the Court "did not elaborate on what facts underlie the retaliation claim, other than to state that these Defendants 'retaliat[ed] against Mr. Toscano for the exercise of his First Amendment activities.'" Docket # 111 at 8. The Court must screen a prisoner-plaintiff's pleading pursuant to 28 U.S.C. § 1915A, but need not set out a detailed road map of a plaintiff's claims. Defendants certainly are entitled to learn the details of Mr. Toscano's retaliation claim, but the pleading is not deficient. If Defendants want a more specific list beyond the allegations of retaliation in the first amended complaint, they may serve interrogatories on him or do other discovery.

Defendants' motion to sever is DENIED. (Docket # 111.)

D.   Scheduling Matters

Efforts to serve process on Defendants Rothchild, Kennedy and Alkire at Pelican Bay were not successful. The Pelican Bay litigation coordinator reportedly informed the Marshal that these individuals were not employed at Pelican Bay. Service of process will be attempted again at a new address. The Clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the first amended complaint, the amendment and the supplemental complaint (i.e., Docket # 20, # 110, and # 12) as well as a copy of all the orders in the case file upon the following Defendants: Tanya Rothchild, P. Kennedy, and B. Alkire. These Defendants apparently are employed at the CDCR's Classification Service Unit, 1515 "S" Street, Sacramento, CA 95814.

The Court now sets these new deadlines for dispositive motions:

1.   No later than **May 23, 2014**, Defendants must file and serve a motion for summary judgment or other dispositive motion. If Defendants are of the opinion that this case cannot be resolved by summary judgment or other dispositive motion, Defendants must so inform the Court prior to the date the motion is due.

///
///
///
///

12

2.	Mr. Toscano's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendants' counsel no later than **June 27, 2014**. In preparing his opposition, Mr. Toscano is cautioned to read the warning regarding motions for summary judgment and to dismiss at pages 16-17 of the order of service and partial dismissal.

3.	Defendants' reply, if any, must be filed no later than **July 14, 2014**.

IT IS SO ORDERED.

Dated: March 3, 2014

_____
EDWARD M. CHEN
United States District Judge